UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | USDC No. 22-cr-275-02 (JMC) |
| David Stapp, *defendant*. ) | |

MOTION TO MODIFY CONDITION OF RELEASE

Defendant, through undersigned counsel Nathan I. Silver, II, Esq. ("counsel"), appointed by this Court under the Criminal Justice Act, respectfully moves the Court, to modify the condition of release that restricts his ability to possess a firearm during the pendency of this case. The reasons follow.

1. Defendant is charged in a four-count criminal information with misdemeanor offenses the government alleges she committed on January 6, 2021, at the United States Capitol. Those offenses are Entering and Remaining in a Restricted Building or Grounds; Disorderly and Disruptive Conduct in a Restricted Building or Grounds; Disorderly Conduct in a Capitol Building; and Parading, Demonstrating, or Picketing in a Capitol Buildings, violations of 18 U.S.C. §§ 1752(a)(1) and (a)(2), and 40 U.S.C. §§5104(e)(2)(D) and (e)(2)(G), respectively. 2. Defendant appeared on August 31, 2023, for his initial appearance in the instant case before Mag. Judge Zia M. Faruqui. Judge Faruqui was charged with determining, under 18 U.S. §3142(c)(1)(B)[1], "the *least restrictive* further condition, or combination of conditions, that…will reasonably assure the appearance of the person as required and the safety of any other person and the community, which may include the condition that the person…(k)(viii) refrain from possessing a firearm, destructive device or other dangerous weapon…" (italics added)

---

[1] Pretrial Services recommended, and the government did not oppose, the defendant's release with conditions.

3. The D.C. Pretrial Services Agency ("PSA" or "Pretrial") recommended "General Supervision," including that "The Defendant is not to possess a firearm, destructive device, or other weapon." (PSA report, page 1) Judge Faruqui followed its recommendation. The actual "Order Setting Conditions of Release" prohibits the defendant from possessing "a firearm, destructive device, or other weapon." (ECF Doc. 7, ¶7(k), page 2)[2]

4. Defendant was also ordered to "submit to supervision by and report for supervision to the Southern District of Mississippi (Gulfport) ("SDMI") (as directed)...." (Id., ¶7(a)

5. It is counsel's understanding that PSA recommends a firearms prohibition uniformly for defendants in January 6 cases, many of whom reside outside the D.C. metropolitan area. They receive "courtesy supervision" by PSA (and in some cases U.S. Probation) officers in other districts. The stated concern is that those officers who make home visits could be in peril by entering a residence where firearms are located. There appears to be no other articulated purpose for this restriction.

6. The defendant opposed the request for the restriction at his initial hearing on August 31, 2022. The defendant has since provided additional information to counsel, which he submits to the Court.

---

[2] The defendant had previously appeared at Rule 5 hearing held on August. 15, 2023, in the Northern District of Ohio and ordered not to possess firearms, ammunition or other destructive devices while on release. (The Rule 5 documents have not been docketed in this case.). Accordingly, the defendant removed his firearms from his residence. The codefendant, who appeared in the SDMI for his Rule 5 hearing was likewise ordered to remove his firearms. (*See* ECF Doc. 7, Rule 5 documents of James Allen Knowles)

6. The defendant lives in Biloxi, Mississippi, in a house on the Mississippi River. He lives there with his wife and two teenage children. He is a former Special Forces soldier, now in the U.S. Air Force Reserves, with more than twenty-five years in the military. He has extensive experience in safely using and storing firearms. He has a collection of firearms that, until his arrest in this case, he kept safely in a gun safe in the family home. He seeks to recover two of his firearms in order to protect himself and his family from alligators and poisonous snakes that crawl up from the river to his property and endanger those living in or visiting the home. He seeks to recover a third firearm, a 12-gauge shotgun, that he needs to assist his mother, who lives in a separate residence, with a similar problem, which is described below.

7. This is the information the defendant, through counsel, provided to the Government in an effort to convince it of his need for the weapons and to persuade it not to oppose his request:

*(The defendant) lives on the Mississippi River,[3] in Biloxi, MS. His mother lives several miles from him, and because of limitations caused by stroke, he visits her 3-4 times weekly to check up on her.*

*Mr. Stapp has many firearms, all of which have been moved off his property, per the Court's previous order. He seeks to have three of them returned to him for the following reasons. The rest of the firearms would remain offsite.*

*Alligators and poisonous cottonmouth snakes often come up the river bank in the back of Mr. Stapp's home. He uses an AR-style rifle that uses .223 caliber ammunition. For the snakes, he uses a pistol that uses .410 cal. Shells.*

---

[3] The defendant lives on the Biloxi River, not the Mississippi.

*His mother's house is also bedeviled by animals, usually bobcats and coyotes. To eliminate those animals, he can use the weapons I've already described. Further, there are so-called "chicken hawks" that prey on his mother's chickens, which she raises. For them, he uses a 12 gauge single barrel shotgun that holds three rounds of ammunition.[4]*

*These firearms are kept in a gun safe, and would not pose a danger to a Pretrial Services or U.S. Probation Officer making a home visit.*

*These various animals can endanger persons and property. In addition, Mr. Stapp says that he, his wife, and their two children, ages 17 and 12, often swim in the (Biloxi) River behind their house. He keeps at the shoreline that rifle just in case an alligator should appear in the water. (I joked with him if there was a lifeguard stand that said whether or not a sharpshooter was on duty.). So Mr. Stapp uses his firearms for the protection of persons, places, and things.*

*Mr. Stapp has been in the U.S. Air Force, both in the regular service and now in the reserves. He has experience in the Special Forces and served in both Iraq and Afghanistan. He flew missions in those places during his 25-year-long career. He's highly trained in the safe use of firearms.*

*This expertise has earned him special privileges. He is covered by another person's Mississippi Trapper's License[5], and he has an enhanced Concealed Carry License for firearms, issued by his state, that permits him to carry a concealed weapon in places -- for example, churches and schools -- where civilians are prohibited from carrying them. (Mississippi does not*

---

[4] The defendant adds that he uses a shotgun, not just because shot, as opposed to a bullet, is more likely to kill the hawks (a fast moving target) but also to eliminate danger to others by an errant round of ammunition.

[5] Mississippi's Wildlife, Fisheries, & Parks department issues such licenses to "anyone 16 years of age or older who traps furbearers (bobcat, mink, muskrat, opossum, otter, raccoon, and weasel), or nuisance animals (beaver, coyote, fox, nutria, and skunks) in the State of Mississippi."(https://www.mdwfp.com/wildlife-hunting/ furbearer-trapping/trapping-regulations.aspx)

*require, as do some states, firearms owners to obtain a separate concealed carry permit so long as the citizen may legally possess a firearm. Yet there are limitations in the areas in which the firearm may be carried)*[6] (Email from counsel to asst. U.S. Attorney Julie Bessler, Oct. 13, 2023)

8. In addition, not only does the defendant possess a concealed carry license without the ordinary restrictions, he is also "Instructor Certified," meaning he is certified to instruct others on the proper, safe use and handling of firearms.

9. The defendant needs his firearms for the protection of his family and visitors in his home. The principal danger they face is lethal attacks from not persons but dangerous animals–alligators and venomous cottonmouth snakes. The defendant has submitted photographs as exhibits that illustrate graphically the size and heft of the alligators that from time to time crawl up on his lawn.

10. The defendant also represents that when he and his family swim in the river, he keeps close at hand a firearm just in case an alligator should appear.

11. Defendant moves the Court to lift the restriction on his possession of firearms. The Second Amendment to the Constitution, as interpreted by the U.S. Supreme Court in the case of *McDonald v. Chicago,* 561 U.S. 742 (2010), relying in part on *Heller v. District of Columbia,* 554 U.S. 570 (2008), assures a private person's right to possess firearms in states and localities. That right may, of course, be subject to reasonable restrictions.

12. Defendant contends that the restriction here is neither reasonable in or justified by these circumstances. Defendant does not present any factors that would suggest he's a danger to others. The initial Pretrial Services Agency report prepared on Aug. 24, 2023, shows a single

---

[6] Exhibit 2, attached (Mississippi firearms license)

arrest and no convictions, and he is in compliance with the terms of his release. (*See* ECF Doc. 22, Status Report, Oct. 16, 2023)   He is not a "prohibited person" under 18 U.S.C. §922(g) that would make his possession of firearms illegal.  There's no evidence before the Court of a history of drug or mental health problems, or currently with alcohol.  The charges he faces are all *non*-violent misdemeanors.  The allegations do not include either assaults against persons or the vandalizing or destruction of property.

14.  It is the defendant's practice to keep his firearms secure, largely so they do not endanger other members of his family.  An officer making even an unannounced supervisory visit would have no reason to fear. Given the principal need for the firearms, and where he uses them (behind his house), there's no reason to think the defendant would mistake a Pretrial Services officer for an alligator or snake.[7]

15. Defendant submits that a blanket application in the January 6 set of cases of the non-possession restriction violates a basic principle of our criminal justice system: to treat defendants, and their cases, individually.  Our system is not designed to, nor should it, treat defendants in bulk, much less as fungible, without further discrimination.  A restriction that infringes on a constitutional right should not be considered a "standard condition" of pretrial release, certainly not without an examination into both the need for the restriction and whether or not it is justified in the circumstances, taking into account the nature of the case, the need for a firearm, and the defendant's background.  It should also be noted that the defendant stands charged with these offenses but is presumed innocent unless and until proven guilty.

---

[7] Further, the defendant does not need eyeglasses to correct his vision, reducing the chance of an accidental shooting.

16. Defendant seeks only the lifting of the restriction on the three firearms that he needs for the described uses.  He does not oppose the restriction remaining in place on his other firearms, or any destructive devices or other weapons.

17. It would be unfortunate if a defendant, charged with non-violent offenses, who serves in the U.S. Air Force Reserves, holds an enhanced permit for firearms from his state, is a qualified instructor in the proper use of firearms, and lives with his wife and two children, were left unable to defend himself or his family from obvious dangers.  But keeping the categorical firearms restriction in place, in the face of an obvious, stated need, would have that effect.

18.  Should PSA, an arm of the Court, have concerns, the Court could order Pretrial not to make unannounced home visits in this case.  Given that the defendant is charged with misdemeanors, appears to have no criminal record or other record of violence, and has complied with the terms of his release,  this would not be an onerous condition to require of a pretrial officer, nor one that would likely interfere with Pretrial's ability to do its job.[8]

18. For the reasons stated above, the defendant urges the Court to remove the restriction on the possession of firearms during the pendency of this case.

A proposed Order is attached.

WHEREFORE, the defendant respectfully moves the Court to grant said relief.

This pleading is,

Respectfully submitted,

/s/

NATHAN I. SILVER, II
Unified Bar #944314

---

[8] It is hard to fathom that a court officer who makes an unannounced visit to a defendant would be in greater danger other unannounced visitors on one's doorstep–e.g., a canvasser for a political candidate or charitable organization; proselytizers for Jehovah's witnesses; or,  in another time, a Fuller Brush man or Avon Calling.

6300 Orchid Drive
Bethesda, MD 20817
(301) 229-0189 (direct)
(301) 229-3625 (fax)
email: nisquire@aol.com

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing pleading has been served via ECF on Julie Bessler, Esq., USDOJ-USAO,, attorney of record for the United States, this 21st day of October, 2023.

/s/
_____
*Nathan I. Silver, II*